AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| OLMAN ARTEAGA and MICHAEL FABER | ) Case No. 3:24-mj-71514 MAG |
| *Defendant(s)* | ) |

**FILED**
Oct 18 2024
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **August 29, 2024** in the county of **San Francisco** in the **Northern** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) and (b)(1)(C) | Possession with intent to Distribute Fentanyl |
| | Maximum Penalties: 20 years in prison; $1 million fine; lifetime supervised release and minimum of 3 years supervised release; $100 special assessment; criminal forfeiture; deportation; denial of federal benefits |

This criminal complaint is based on these facts:
See attached affidavit of DEA TFO Domenico Discenza

☑ Continued on the attached sheet.

Approved as to form  _/s/ Daniel Pastor_
AUSA  Daniel Pastor

Sworn to before me by telephone.

Date: 10/17/2024

City and state: San Francisco, California

/s/ Domenico Discenza
*Complainant's signature*

Domenico Discenza, DEA Task Force Officer
*Printed name and title*

[Signature]
*Judge's signature*

Hon Peter H. Kang, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR CRIMINAL COMPLAINT AND ARREST WARRANTS

I, Domenico Discenza, a Task Force Officer with the Drug Enforcement Administration (DEA), having been duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I make this affidavit in support of an application for arrest warrants and a criminal complaint charging **OLMAN ARTEAGA** and **MICHAEL FABER** with possession with intent to distribute a mixture or substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide (fentanyl), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), occurring on or about August 29, 2024, in San Francisco, California, in the Northern District of California.

### SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Task Force Officers, Special Agents, and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrants. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

\\

1

## AFFIANT BACKGROUND

4. I am a Sergeant at the San Francisco Police Department ("SFPD") and have worked as a sworn officer for the SFPD for approximately 25 years. I have been assigned as a Sergeant at the SFPD Narcotics Unit since March 2023. Prior to that, I was a Sergeant at the Strategic Investigations/Homicide Detail for approximately nine years.

5. I am a sworn Task Force Officer ("TFO") for the Drug Enforcement Administration ("DEA"). I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including drug offenses.

6. In the police academy and at SFPD Detective School, I received narcotics-related and narcotics investigations training, covering all aspects of drug investigations, including identification of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, undercover operations, and the general operation of drug trafficking organizations. During my career, I have received hundreds of hours of continuing education training in law enforcement investigations, including training on drug trafficking investigations and, specifically, fentanyl investigations.

7. During my employment at SFPD, I have participated in many controlled substance investigations. I have discussed the methods and practices used by drug traffickers with other law enforcement officers. I have also had conversations with drug users and sellers over the course of my career. I have also participated in many aspects of drug investigations including, but not limited to, undercover operations, records research, physical surveillance, and the execution of federal and state search warrants and arrest warrants that resulted in the arrest of suspects and the seizure of controlled substances. I have reviewed numerous reports related to drug investigations and arrests. I have also prepared search warrants and arrest warrants related to various crimes against persons investigations.

8. Based on my training and experience, as well as conversations I have had with drug dealers and experienced law enforcement officers, I have become familiar with the practices of narcotics traffickers. Specifically, I am familiar with methods that traffickers use to smuggle, safeguard, transport, and distribute narcotics, and to collect and launder the proceeds of drug trafficking.

9. I have also had discussions with other law enforcement officers and training in the packaging and preparation of narcotics, the methods of operation, and security measures that are often employed by narcotics traffickers. I have examined documentation of various methods by which fentanyl and methamphetamine and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed. I am familiar with the appearance of marijuana, heroin, cocaine, methamphetamine, fentanyl, and other controlled substances.

10. I am familiar with the facts and circumstances of the investigation through my participation in it based on several investigative techniques, including discussions with agents and officers from other law enforcement agencies, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part.

## APPLICABLE STATUTE

11. **Possession of Controlled Substance with Intent to Distribute**. Under 21 U.S.C. § 841(a)(1), it is unlawful for any person to knowingly or intentionally possess with intent to distribute a federally controlled substance. Under 21 C.F.R. § 1308.12, fentanyl is a Schedule II controlled substance.

## STATEMENT OF PROBABLE CAUSE

12. On or about August 29, 2024, shortly after midnight, officers from the SFPD were conducting a spotting operation in the vicinity of Grove Street between Hyde Street and Larkin

Street in the Tenderloin neighborhood of San Francisco.  SFPD Officer Huyen Nguyen #2108 observed **OLMAN ARTEAGA** standing near 30 Grove Street—which is an entrance to the main branch of the San Francisco Public Library.

13. I know from my experience as a narcotics officer in San Francisco that the area around 30 Grove Street in the Tenderloin neighborhood is an area well-known for the use and sale of illicit narcotics at night. This area is also known as having numerous complaints from people who live, work, and commute in the area.

14. Officer Huyen Nguyen saw an unknown man approach **ARTEAGA** and stand next to him.  While the two men chatted, the unknown man handed **ARTEAGA** U.S. currency.

15. **ARTEAGA** then walked over to **MICHAEL FABER**—who was standing nearby—and opened a backpack that **FABER** was wearing.

16. **ARTEAGA** removed a bag of white-colored suspected narcotics and gave the unknown man (who had given **ARTEAGA** U.S. currency) some of the white-colored suspected narcotics.

17. Based on my training and experience, I know that narcotics traffickers are frequently assisted by a "holder" who holds narcotics and money for a drug trafficker so that the trafficker would not face as significant losses and criminal exposure if the trafficker were arrested while dealing.  The "holder" also sometimes acts as a lookout for the trafficker and sometimes directs drug customers to the trafficker.  The "holder" is often a user of illegal narcotics who is compensated with illegal drugs.

18. Based on what Officer Huyen Nguyen observed on August 29, 2024, near 30 Grove Street and based on his training and experience, the officer concluded that **ARTEAGA** had engaged in a hand-to-hand suspected narcotics sale with the unknown man and that **FABER** was holding suspected narcotics in the backpack for **ARTEAGA**.

19. Officer Huyen Nguyen, who observed the hand-to-hand transaction, broadcast to an arrest team a description of **ARTEAGA**, who was wearing a black jacket with a white logo, black pants, and black shoes.  Officer Nguyen also broadcast a description of **FABER** who was

wearing a black and white camouflage-print jacket, gray pants, white shoes, and a black backpack with a white Puma logo on it.

20. The arrest team moved in and arrested **ARTEAGA** and **FABER**. Officer Huyen Nguyen observed the arrest and advised officers on scene that they had the correct subjects detained.

21. Officer Huyen Nguyen searched **FABER** incident to arrest and seized multiple baggies of suspected fentanyl, one black plastic bag containing suspected methamphetamine, and one baggie containing suspected heroin, a digital scale, multiple clear sandwich bags and small Ziplock bags, and a suspected meth pipe for smoking methamphetamine.

22. Officer Huyen Nguyen searched **ARTEAGA** incident to arrest and seized his cellphone and roughly $835 in U.S. currency bills: ($100 x 3, $20 x 19, $10 x 9, $5 x 9, $1 x 19).

23. Based on my training and experience as a narcotics police officer, I know that people who buy illegal narcotics will often provide various denominations of cash to pay for the narcotics. It is common for street-level narcotics dealers to have a large number of bills of various denominations on their person, which are the proceeds of illegal narcotics sales.

24. At the Tenderloin police station, Officer Huyen Nguyen field tested the suspected narcotics seized from the backpack carried by **FABER** using a TruNarc Analyzer.

25. The suspected fentanyl had a gross weight of approximately 482 grams and tested presumptively positive for fentanyl.

26. The suspected methamphetamine had a gross weight of roughly 22 grams and tested presumptively positive for methamphetamine.

27. Based on my knowledge, training, experience, and consultation with other experienced officers, I believe that the amount of fentanyl **FABER** possessed when arrested, the multiple drugs he possessed, the manner of their packaging, and the totality of circumstances described above—including the observation of **ARTEAGA** engaging in a suspected hand-to-hand narcotics transaction; **ARTEAGA** being arrested with roughly $835 in cash in bills of various denominations which is consistent with narcotics dealing; and **FABER**'s possession of a

digital scale in the same backpack as narcotics—indicates that the suspected fentanyl seized from **FABER** on or about August 29, 2024 was possessed by both **ARTEAGA** and **FABER** with the intent to distribute it to other people.

28. This conclusion is reinforced by the fact that the conduct occurred while on or near 30 Grove Street in the Tenderloin neighborhood shortly after midnight (an area notorious for a high volume of drug sales activity at night), the three different types of drugs seized from the backpack, and the fact that the drugs were seized along with a digital scale and multiple Ziplock baggies which are commonly carried by narcotics traffickers and used to distribute drugs.

## CONCLUSION

29. Based on my training and experience, and the facts and circumstances set forth above, I respectfully submit that there is probable cause to believe that on or about August 29, 2024, in the Northern District of California, **OLMAN ARTEAGA** and **MICHAEL FABER** possessed with the intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Accordingly, I respectfully request that the Court issue a criminal complaint and federal warrants for their arrests.

/s/
Domenico Discenza
Task Force Officer
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 17th day of October 2024. This complaint and warrant are to be filed under seal.

HON. PETER H. KANG
United States Magistrate Judge